NORIEGA & ALVAREZ, PLAINTIFFS AND APPELLANTS, *v.* NEW
   YORK & PORTO RICO STEAMSHIP COMPANY, DEFENDANT
   AND APPELLEE.

APPEAL from the District Court of Ponce in an Action for
the Recovery of Personal Property.

No. 2841.—Decided July 26, 1923.

CLAIM AND DELIVERY OF PERSONAL PROPERTY—PURCHASE AND SALE—MERCHAN-
   DISE IN TRANSIT.—The following conditions are necessary to entitle a vendor
   to stop merchandise in transit: (1) There must be an unpaid vendor; (2)
   the ownership of the goods must have passed; (3) the merchandise must
   be in transit from the vendor to the vendee; (4) a resale of the merchan-
   dise by the vendee must not have extinguished the right; (5) the vendee
   must be insolvent.

ID.—ID.—ID.—BILL OF LADING.—A resale based upon a straight bill of lading
   bearing the words ''Not negotiable'' does not prevent the original and
   unpaid vendor from exercising his right to stop the delivery of the mer-
   chandise in transit when the original vendee is insolvent.

The facts are stated in the opinion.

Messrs. *H. Tormes* and *R. Martínez Nadal* for the ap-
pellants.

Messrs. *O. B. Frazer* and *N. Gammans* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
court.

This is an action to recover the possession of personal
property brought under section 170 *et seq.* of the Code of
Civil Procedure. The amended complaint on which the ac-
tion is based reads in part as follows:

''1.—That since December 18, 1920, the plaintiffs, Noriega & Al-
varez, have been the absolute owners with a right to the immediate
possession of the following property:

''50 Bxs. Y. A. 2902_____ 22673/4
''25 '' Gouda 1218 _____ 870
''11 '' Daises Skim 526_____,_____ 437.

''2.—That the said property has a value of $1,030.00 and when
this action was brought on December 21, 1920, was stored at the
Port of Ponce, Porto Rico.

''3.—That since December 21, 1920, the defendant New York &
Porto Rico Steamship Co., without the consent of the plaintiffs, has

wrongfully detained the possession of the said property and has refused to deliver it to the plaintiffs notwithstanding their friendly demands therefor.

"4.—That by proceedings initiated by them under sections 170 *et seq.* of the Code of Civil Procedure of Porto Rico in this same action on December 21, 1921, the plaintiffs obtained possession of the property described through the marshal of this court, who took it from the wrongful possession of the defendant and delivered it to the plaintiffs. For the foregoing reason we pray that after due process of law this court render judgment sustaining the present amended complaint and consequently adjudging (1) that on and after December 18, 1920, the plaintiffs were the absolute owners of and entitled to the possession of the property described, and (2) that the defendant pay the costs of this action."

The answer reads in part as follows:

"1.—The defendant denies that the plaintiffs are the owners of the property described in the first paragraph of the amended complaint and also that the plaintiffs are the owners of any part of the said property. The defendant also denies that the plaintiffs have been at any time since December 18, 1920, the owners of the said property or of any part of it. The defendant further denies that the plaintiffs now have or at any time since December 18, 1920, have had a right to the immediate possession of the said property or any part of it and avers that on December 18, 1920, and at all times thereafter Reynolds & Co. were the owners of all of the said property.

"2.—The defendant denies that the merchandise mentioned in the first paragraph of the said amended complaint has a value of only $1,060 and alleges to the contrary that the said merchandise has a value of $1,130.95.

"3. The defendant admits that it refused to deliver the said merchandise to the plaintiffs and that the plaintiffs demanded its delivery, and alleges that it had good cause for refusing to make such delivery, that is, instructions to that effect from the owners of the said merchandise.

"4. As regards the allegations of the fourth paragraph of the amended complaint, the defendant alleges that the marshal of this court delivered the said merchandise to the plaintiffs only as custodians *in custodia legis,* and further avers that the plaintiffs disposed of the said merchandise unlawfully and in contempt of this court.

"For all of which the defendant prays the court to dismiss the complaint, with costs, expenses, disbursements and attorney's fees to the defendant and to order the said plaintiffs to pay to the defendant the value of the merchandise to which this answer refers, or the sum of $1,130.95."

After a trial the court decided the case against the plaintiffs. The judgment is based on the following findings of fact:

"1. That the defendant New York & P. R. S. S. Company refused to make delivery of the said property to the plaintiffs because of a cablegram received from Reynolds & Company ordering it to withhold delivery of the said property. 2. That the said merchandise was sold by Reynolds & Co. to Noriega & Sanquírico on a credit of thirty days. 3. That the value of the said merchandise is $1,130.95. 4. That the plaintiffs disposed of the said property. 5. That on the date on which Reynolds & Co. stopped the delivery of the said merchandise Noriega & Sanquírico were insolvent. 6. That the bill of lading was a straight and non-negotiable one which could not be endorsed to plaintiffs Noriega & Alvarez."

Not being satisfied with the judgment dismissing their complaint and ordering them to pay to the defendant the sum of $1,130.95, the value of the merchandise belonging to Reynolds & Co., the plaintiffs appealed to this court, assigning in their brief six errors alleged to have been committed by the court, as follows: 1, In limiting the direct evidence of the plaintiffs to the transaction involved in the suit; 2, in admitting secondary evidence to show the instructions received by the defendants; 3, in finding that Noriega & Sanquírico were insolvent; 4, in determining the scope of the bill of lading; 5, in dismissing the complaint and adjudging that the plaintiffs pay the amount stated in the judgment, and, 6, in imposing the costs upon the plaintiffs.

The plaintiffs complain that although they were not permitted to prove prior transactions between Noriega & Sanquírico and Reynolds & Co., the defendant was allowed to

introduce evidence of other negotiations in order to show the insolvency of Noriega & Sanquírico. It appears from the record that the plaintiffs consented to the ruling of the court in introducing their evidence. They took no exception. What occurred subsequently did not revive what was already ruled on and consented to. Moreover, the circumstances were different. The insolvency of Noriega & Sanquírico was alleged in the answer and evidence of their failure to pay for merchandise sold to them previously by Reynolds & Co. was admissible.

Nor do we think that the second error assigned was committed by the court. The appellants insist that instead of a copy of the cablegram received by the defendant its original should have been introduced. In our opinion the answer of the defendant contained in its brief is sufficient. It says:

"The material fact in issue was and is the reason of the company for refusing to make the delivery, and as the intention of the New York & Porto Rico Steamship Co. is derived from the copy of the cablegram received by it, this is primary evidence. In regard to the sending of the cablegram by Reynolds, it appears from the evidence that the original of the said cablegram is in the New York office and it is well known that when the original is beyond the jurisdiction and not in the possession of any of the parties, it is not necessary to offer it in evidence."

We will consider together the questions raised by assignments of error numbers 3, 4 and 5.

There is no doubt of the fact that the cheese referred to was sold by Reynolds & Co. to Noriega & Sanquírico, or of its shipment, or of the seller's order that the merchandise should not be delivered and the defendant's compliance with that order.

The fundamental point of this action consists in the right of the seller to order the stoppage of the merchandise sold while in transit for delivery to the buyer. Both parties cite copious jurisprudence. We shall endeavor to refer to that which may be strictly necessary.

Professor Williston, an authority on the matter, in his work on "Sales" says:

"In order that the seller shall have the right to stop goods in transit, these circumstances must concur: (1) There must be an unpaid seller; (2) the title to the goods must have passed; (3) the goods must be in transit from the seller to the buyer; (4) the buyer must be insolvent; (5) a resale of the goods by the buyer must not have cut off the right." Williston on Sales, page 893.

There must be an unpaid seller. The evidence shows that the cheese sold had not been paid for. The sale was made on a credit of thirty days. Furthemore, when the order to stop delivery was given by the seller and complied with by the defendant the draft had not been accepted.

The title to the goods must have passed. This was a completed contract. By virtue of it the title to the goods sold passed to the buyer.

The goods must be in transit from the seller to the buyer. The cheese was shipped by the seller consigned to the buyer and was in transit in the defendant's steamship when the order not to deliver was given.

The buyer must be insolvent. This condition requires a more ample consideration. The evidence shows that some days after the occurrence of the facts originating this action Noriega & Sanquírico filed a petition in bankruptcy in the Federal Court. The said firm had business relations with Reynolds & Co. and failed to pay for when due various shipments of merchandise amounting to some six thousand dollars. When Reynolds & Co. received this information they had shipped the cheese and they immediately gave the said order for its non-delivery. The evidence does not show, therefore, that on the date when the order was given Reynolds & Co. were in possession of conclusive evidence of the insolvency of Noriega & Sanquírico, but the information that they had was sufficient, according to the jurisprudence, to justify their acting as they did.

Summing up that jurisprudence, Ruling Case Law says:

"The insolvency of the buyer is essential to the seller's right of stoppage in transitu. It cannot be exercised at the mere caprice of the seller where no insolvency exists, and the fact that the goods have been levied on by attaching creditors of the buyer, if the buyer is not insolvent, does not give the seller the right of stoppage to the detriment of such creditors, and in order to establish his right of stoppage the seller must show the insolvency of the buyer. *This requirement of insolvency does not require that the buyer should be absolutely bankrupt or have been formally adjudged a bankrupt, but it merely imports a general inability to pay one's just debts in the ordinary course of business, and the fact that the buyer's financial affairs have become so seriously embarrassed that he is unable to fulfil his obligations has been held sufficient, especially where this is followed by his subsequent insolvency.* It has been held that strict proof of insolvency is not required to justify the exercise of the right; that it is sufficient that there has been a failure to pay the debt on account of which the right is claimed, and that the debtor cannot be found at this reputed place of business. The mere fact that the buyer may be in default in the performance of his part of the contract does not give the seller a right of stoppage; and the right does not arise in case of the death of the buyer, unless his estate is also insolvent." 24 R. C. L. Sec. 403, page 133–34. (Italics volunteered.)

Finally, a resale of the goods by the buyer must not have cut off the right. As in this case there had been a resale by the plaintiffs, this requisite apparently favors them. But could that resale be made validly? We have said that the bill of lading contains the words "Straight Bill of Lading, Not Negotiable" not only printed, but also stamped in large letters on the most noticeable part of the document with a rubber stamp.

"When the bill of lading is straight or non-negotiable by the buyer there can be no doubt of the applicability of the doctrine of stoppage in transit. This is a typical case where the doctrine should be followed." Williston on Sales,

paragraph 542, page 920. Then, referring to resales and bill of lading, he says:

"It is fundamental that a seller can give no larger right than he has. When, therefore, goods are subject to a legal lien, as they are when an unpaid seller is in possession of them, the buyer can acquire only such right as the original buyer from whom he bought them had.

"The rights of subpurchasers have been considered perhaps most often in cases involving the doctrine of stoppage in transitu, and this right, it is generally held, can only be defeated at common law by the transfer of an indorsed bill of lading to the subpurchaser, because only then does the subpurchaser, in effect, get delivery of the goods. Under the Sales Act on the one hand, even the transfer of an indorsed bill of lading, if it is a non-negotiable bill, will not affect the seller's right of stoppage in transitu, and on the other hand, the mere fact that a negotiable bill of lading is outstanding limits the seller's right. The importance of an indorsed bill of lading is due to its operation as a delivery of the goods as well as an agreement to transfer title. Under the Sales Act it is only negotiable documents of title that operate as a delivery of the goods when indorsed. Accordingly, the seller, if the right of stoppage in transitu be regarded as a legal right, has a higher right than a subpurchaser, who acquires anything less than a transfer of title accompanied by a document which amounts in effect to a delivery of the goods; and even if the seller's right of stoppage is regarded merely as an equity, this equity takes precedence over any right which the buyer can give to a subpurchaser by any other means than an indorsed negotiable bill of lading. But as a negotiable bill of lading outstanding in the hands of the buyer can subsequently be endorsed, stoppage is not permitted under the Sales Act, when such a bill of lading has been issued unless the seller is able to deliver it to the carrier." Williston on Sales, pages 938 and 939.

Noriega & Sanquírico did not demand the cheese from the defendant. If they had done so personally there would have been no question. Prior to the arrival of the steamship at the dock in Ponce the stoppage of the merchandise had been ordered and no claim could have been made by Noriega & Sanquírico who at that time were in debt to Reynolds & Co. and really in a state of insolvency. The

plaintiffs demanded the merchandise, but what document did they present? A non-negotiable bill of lading: a document which of itself showed that no one was authorized to use it except Noriega & Sanquírico. The right of the plaintiffs, therefore, was entirely subject to that of the original buyer. The resale did not change the relations between the seller and his direct buyer. The right which the plaintiffs might have acquired yields absolutely to that of the seller.

Both parties in their respective briefs discuss the question involved in the light of American jurisprudence and we have followed that course. The last paragraph of article 706 of our Code of Commerce says that "The bill of lading may be issued to bearer, to order, or in the name of a specific person." And article 708 reads as follows: "Bills of lading issued to the bearer and sent to the consignee shall be transferable by the actual delivery of the instrument; and those issued to order by virtue of an indorsement. In either case, the person to whom the bill of lading is transferred shall acquire all the rights and actions of the assignee or indorser with regard to the merchandise mentioned therein." *Expressio unius est exclusio alterius.* But although this were not so, admitting that the bill of lading issued in the name of a specific person also may be negotiable by him in general terms, there would be no doubt that it would cease to be so if in the same bill of lading it were clearly and expressly stated that it is not negotiable. That condition would be the law of the contract.

It only remains to consider the last assignment of error. There is no evidence in the record to show that there was any fraudulent combination between the plaintiffs and Noriega & Sanquírico. The plaintiffs appeared, and legally remain after the suit, as purchasers in good faith. But under the law it has been seen that they had no right to take possession of the merchandise, and the trial judge having con-

cluded that the costs should be imposed upon them and a clear abuse of discretion not having been shown, this court would not be justified in reversing his decision.

As the plaintiffs, failing in their duties as custodians, whether openly or through ignorance, sold the merchandise in question, in lieu thereof they should pay to the defendant the value of the merchandise as ordered by the judgment appealed from, which should be affirmed in all of its parts.

*Affirmed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.